```
 UNITED STATES DISTRICT COURT
 SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------X

 JUSTIN HOMKOW,

                Plaintiff,

     -against-                              04 Civ. 3587 (KMW)(THK)
                                                OPINION AND ORDER
 MUSIKA RECORDS, INC., ALEXANDER LIM,
 RAFAEL AGUDELO, and JOHN DOES NOS. 1-10,

                Defendants.

 ------------------------------------------X
```

KIMBA M. WOOD, U.S.D.J.

Plaintiff Justin Homkow ("Plaintiff") filed this action against Defendants Musika Records, Inc. ("Musika Records"); Alexander Lim ("Lim"); Rafael Agudelo ("Agudelo"); and John Does Nos. 1-10 (collectively, "Defendants"). Plaintiff moves for sanctions against John H. Harris ("Harris"), Defendants' counsel.

The Court granted Plaintiff a default judgment against Defendants on the following claims: (1) fraud, (2) breach of contract, (3) unjust enrichment, (4) conversion, (5) replevin, (6) accounting, (7) constructive trust, (8) breach of fiduciary duty, (9) misrepresentation, (10) violation of New York General Business Law § 349, and (11) copyright infringement.[1] These claims arose after Plaintiff hired Defendants to produce an orchestral recording entitled "The Music of George Washington's

---

[1] Aside from the copyright claim, all of Plaintiff's claims are state law claims.

1

Life: A Symphonic Journey" (the "Washington Music Project").
The Court referred the action to Magistrate Judge Katz for an
inquest into damages.[2]

On March 20, 2008, Plaintiff moved for sanctions against
Defendants and Harris, alleging that they acted in bad faith in
their dealings with the Court and Plaintiff.

On September 10, 2009, Magistrate Judge Katz issued a Report
and Recommendation (the "Report").  The thorough and well-
reasoned Report recommends that the Court award Plaintiff damages
for breach of contract,[3] prejudgment interest on the damages
award, and injunctive relief.  The Report also recommends that:
(1) the Court use its inherent power to impose sanctions on
Defendants for making false statements to the Court in bad faith,
(2) the Court sanction Defendants in an amount equal to
Plaintiff's attorney's fees and costs, (3) this sanction amount

---

[2] On August 22, 2007, Magistrate Judge Katz issued a Report
and Recommendation in which he primarily analyzed Plaintiff's
copyright infringement claim.  The Report recommended that the
Court award Plaintiff injunctive relief, but deny Plaintiff all
other requested relief.
   On February 25, 2008, the Court awarded the recommended
injunctive relief, denied all other relief, but granted Plaintiff
another opportunity to pursue damages with respect to his ten
remaining claims.  The Court referred this action to Magistrate
Judge Katz for a further inquest into damages regarding
Plaintiff's remaining ten claims and noted that the referral
extended to any motion for sanctions that Plaintiff chose to
file.

[3] The Report recommends that the Court award $25,494.00 in
compensatory damages and $6,878.63 in incidental damages.

2

be awarded to Plaintiff, and (4) the Court not sanction Harris.

Plaintiff and Defendants both filed timely written objections to the Report's recommendations regarding sanctions. For the following reasons, the Court adopts the Report's recommendations in their entirety.

**II.   Findings as to Damages and Equitable Relief**

Parties do not object to the Report's recommendations as to how the Court should rule on Plaintiff's damages and equitable relief claims.  Therefore, the Court reviews these recommendations for clear error.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b) advisory committee's note.

The Report recommends that the Court (1) award compensatory and incidental damages for breach of contract and the corresponding prejudgment interest, (2) deny the Plaintiff's request for damages based on lost profits, conversion, and breach of fiduciary duty, (3) deny the equitable relief requested by Plaintiff – replevin, accounting, and constructive trust, and (4) award sua sponte injunctive relief by requiring Defendants to return to Plaintiff any Washington Music Project materials in their possession, requiring Defendants to provide a sworn affidavit indicating that all Washington Music Project materials have been returned to Plaintiff, and enjoining Defendants from using or exploiting in any manner the Washington Music Project

materials.[4]

The Court finds these portions of the Report to be well-reasoned and free of any "clear error on the face of the record" and therefore adopts the Report's recommendations. Fed. R. Civ. P. 72(b) advisory committee's note; see also Rodriguez v. Morton,

---

[4] Defendants seek reconsideration of the Court's February 25, 2008 Order in which the Court granted Plaintiff another opportunity to pursue damages under the ten state law claims.

The Court construes Defendants' motion for reconsideration as a motion for reconsideration on the ground that the Court committed clear error. Official Comm. Of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 332 F.3d 147, 167 (2d Cir. 2003) (explaining that district courts will not usually reconsider their prior decisions pursuant to Federal Rule of Civil Procedure 54(b) "unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.") (internal quotations omitted). The Court assumes, arguendo, that Defendants' motion for reconsideration of the Court's decision is timely.

In the February 25, 2008 order, the Court stated that Plaintiff had not abandoned the ten state law claims even though Plaintiff did not specifically discuss the merits of these claims in his briefing. Plaintiff in his submissions to this Court stated: "Although this action also included several New York State common law and statutory claims against [D]efendants, to the extent that damages awarded to [Plaintiff] compensate him for his entire loss, such claims are superseded by [Plaintiff's] claims under the Copyright Act." Homkow v. Musika Records, Inc., 87 U.S.P.Q.2D (BNA) 1039, at *17. The Court explained that Plaintiff's conditional reliance on the copyright claim kept the other ten claims from being abandoned. Id. ("Plaintiff's conditional reliance on the copyright infringement claim is not sufficient to deem the other ten claims abandoned.")

Defendants present no legal support to bolster their argument that Plaintiff's decision to conditionally rely on the copyright claim and therefore not to develop his arguments for the other claims, necessarily deems his other claims abandoned. Accordingly, the Court does not find that it committed clear error in finding that Plaintiff's ten state law claims had not been abandoned and thereby allowing the Plaintiff another opportunity to pursue damages on those ten claims.

2009 U.S. Dist. LEXIS 12470, *2 (S.D.N.Y. Feb. 13, 2009).

Accordingly, the Court GRANTS Plaintiff compensatory damages in the amount of $25,494.00, incidental damages in the amount of $6,878.63, and prejudgment interest on the total damages ($32,372.63) at a rate of 9%, from the date of breach (May 8, 2003) to the date of judgment (March 17, 2009).

The Court also GRANTS the following injunctive relief: (1) Defendants shall return to Plaintiff any Washington Music Project materials in their possession to Plaintiff, (2) Defendants shall submit a sworn affidavit to the Court stating that they have returned any Washington Music Project materials in their possession to Plaintiff, and (3) Defendants are enjoined from using or exploiting in any fashion any of the Washington Music Project materials.

The Court DENIES Plaintiff's request for damages on the basis of conversion, lost profits, and breach of fiduciary duty. The Court also DENIES Plaintiff's request for equitable relief based on replevin, accounting, and constructive trust.

### III. Findings as to Sanctions

The Report concludes that Defendants acted in bad faith when they made contradictory statements to the Court and to Plaintiff regarding whether Defendants had the sought-after Master digital tapes in their possession and whether Defendants had provided these Master tapes to the Plaintiff. The Report also concludes

that Harris did not act in bad faith when discussing the Master tapes with the Court.

Accordingly, the Report recommends that the Court sanction Defendants pursuant to its inherent authority to sanction, and that the sanctions should be in the amount of Plaintiff's attorney's fees and costs from the date of stipulation in state court (April 20, 2004) to the date of default judgment (December 6, 2005). Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (U.S. 1991) (relying on the inherent authority of the court, "[a] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons)(internal quotations omitted). The Report also recommends that Harris not be sanctioned.

The parties object to the Report's recommendations. For the reasons stated below, the Court adopts the Report's recommendations as to sanctions in their entirety.

**A. Plaintiff's Objection to the Report**

Plaintiff's sole objection to the Report is that it recommends that Harris not be sanctioned. Plaintiff challenges this recommendation, arguing that Harris could not have made the "mutually exclusive and self-contradictory false statements" to the Court in his capacity as Defendants' counsel unless he had acted in bad faith. (Plaintiff's Letter Brief in Reply to Defendants' Objections to the Report, at 2.)

Because the motion for sanctions is a non-dispositive motion, the Court reviews this recommendation for clear error.[5] Fed. R. Civ. P. 72(a).

The Court finds no clear error in this portion of the Report.  Magistrate Judge Katz properly laid out and applied the standard for sanctioning counsel pursuant to 28 U.S.C. § 1927 and the inherent authority of the court.  The standard for these sanctions is that Plaintiff must show "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith."  Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000).

The Report explained that, although Harris made facially inconsistent statements, Plaintiff has not met its burden of establishing that Harris acted in bad faith.  Plaintiff did not provide evidence that Harris knew the statements he made on behalf of his clients were false or intentionally misleading.

---

[5] The Second Circuit Court of Appeals has established that monetary sanctions for noncompliance with discovery orders are non-dispositive. Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d. Cir. 1990); Colida v. Nokia Inc., 2008 U.S. Dist. LEXIS 75450, *5 (S.D.N.Y. 2008).  The Court sees no reason why monetary sanctions for sanctionable conduct during an inquest into damages would not also be non-dispositive.  Deeming a post-judgment order dispositive would be illogical given that the matter, by definition, has already been disposed of when the Court entered judgment.
    The parties do not address whether the motion for sanctions is a dispositive or non-dispositive motion and, therefore, what standard of review the Court should apply in reviewing the Report's objected to recommendations.

Rather, the Report views the record as, at most, supporting a finding that Harris "did a woefully inadequate job of investigating his client's assertions," which is not tantamount to bad faith.[6]  (Report, at 46.)  Accordingly, the Report concludes there is no basis for sanctioning him.  (Report, at 45.)

The Court finds no clear error in the Report's conclusion that Plaintiff had not met his burden on showing that Harris had acted in bad faith.  The Court therefore adopts the Report's recommendation that Harris should not be sanctioned and DENIES Plaintiff's motion for sanctions against Harris.

**B.   Defendants' Objections to Sanctions**

Defendants' three objections to the Report's sanctions recommendations are based on arguments that were not previously raised by Defendants in their briefing before Magistrate Judge Katz.  The three objections are: (1) the Court's imposition of sanctions is precluded by the equitable doctrine of laches; (2) the term "Masters" was ambiguous and therefore Defendants' statements regarding the Masters were neither false nor misleading;[7] and (3) Defendants should not be required to pay all

---

[6] The Court, in reviewing the Report's recommendation for clear error, recognizes that Magistrate Judge Katz had extensive interactions with the parties and their counsel during the inquest into damages.

[7] Although Defendants did not argue in their opposition to the sanctions motion that they did not understand what was meant

8

of Plaintiff's attorney's fees and costs because most of these fees and costs were not incurred while the Plaintiff was pursuing the Master tapes.[8]

Because these arguments were not raised in the briefing provided to Magistrate Judge Katz, the Court declines to consider these argument now.[9]  Orix Fin. Servs. v. Thunder Ridge Energy, Inc., 2006 U.S. Dist. LEXIS 54673, *12-13 (S.D.N.Y. Mar. 7, 2006)("The Court need not consider at the objection stage any legal argument not presented to the Magistrate Judge.").

### C. Remaining Claims

The Report's unobjected to recommendations regarding sanctions -- including the recommendations that Rule 11 sanctions

---

by "Masters," Harris asserted in Defendants' opposition briefing that he did not understand the meaning of "Masters."  The Report notes that "only Harris professes a possible misunderstanding of the term 'Masters.'" (Report, at 49.)

[8] Defendants were on notice that Plaintiff was seeking to recover his attorney's fees and costs from this period and Defendants did not object to "any aspect of the cost and fees request submitted by Plaintiff." (Report, at 51.)  Defendants only made a more general claim that sanctions were inapplicable under the circumstances.

[9] Even if Defendants had not waived the argument that they did not understand what was meant by "Masters," the Court would find Defendants' argument lacking in credibility.  The record clearly reveals that Plaintiff had defined what he meant by the Masters in the course of litigation.

Moreover, even if Plaintiff had not defined what was meant by Masters, Defendants were repeatedly ordered to turn over all materials relating to the Washington Music Project, which included Masters, however defined.  Defendants' failure to turn over all Washington Music Project materials was in violation of several court orders.

not be awarded, and that the Plaintiff should be awarded $35,895.46 for attorney's fees and costs, rather than the $36,546.31 Plaintiff requested -- are free from clear error. Accordingly, the Court adopts the Report in its entirety.

### IV. Conclusion

The Court GRANTS Plaintiff's request for damages of $32,372.63 plus prejudgment interest at a rate of 9% from the date of breach to the date of judgment.  The Court GRANTS injunctive relief, thereby requiring Defendants (1) to return to Plaintiff any Washington Music Project materials, and (2) to provide a sworn affidavit to the Court stating that all the materials have been returned to Plaintiff.  The Court also enjoins Defendants from using or exploiting in any manner the materials of the Washington Music Project.

The Court GRANTS Plaintiff's motion for sanctions against Defendants [Docket Entry 61].  Accordingly, Defendants are required to pay Plaintiff $35,895.46 in attorney's fees and costs.  All other requests for damages or relief are DENIED.

The Clerk of the Court is directed to close this case.  Any pending motions are moot.

SO ORDERED.

DATED:   New York, New York
         March 17, 2009

_____
KIMBA M. WOOD
United States District Judge